United States District Court
Northern District of Indiana
Hammond Division

STEVEN C. HELM JR.,

    Plaintiff,

    v.

ANCILLA DOMINI COLLEGE,

    Defendant.

Civil Action No. 3:11-CV-212 JVB

**OPINION AND ORDER**

    Plaintiff Steven C. Helm brings this action against Defendant Ancilla Domini College under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2003e, et. seq., alleging claims of racially discriminatory discharge and retaliation for his involvement in his wife's gender discrimination lawsuit against Defendant. Defendant has filed a motion for summary judgment on both of Plaintiff's claims (DE 24).

**A.**     **Facts**

    Ancilla is a two-year liberal arts college located in Donaldson, Indiana. Helm began working for Ancilla in 2004 as the part-time junior varsity men's basketball coach. In 2005 he became employed full-time as the head men's basketball coach and assistant bookstore manager. From May 2006 until his termination on May 24, 2010, he served as head men's basketball coach and field maintenance assistant. He had no employment contract with Ancilla. Gene Reese, Ancilla's athletic director, was Helm's supervisor for both of Helm's positions.

The field maintenance team consisted of field maintenance supervisor Dave Liverance, Helms, and fellow field maintenance assistant Joseph Yonto. One of Helm's duties was to maintain the softball field. This job included preparing the field before games and performing maintenance tasks between and after games.

According to Reese, he noticed during the 2008 softball season that Plaintiff was not completing all his responsibilities, including between and after game tasks. His failure to complete his softball game-day duties continued into the 2009 season. In August 2009 Reese learned that Helm had told Liverance he was unavailable to do field maintenance on Saturdays. He cited a schedule filled with men's basketball activities, community service, church service, and family as the reason. Reese met with Helm on August 25, 2009, regarding Helm's field maintenance responsibilities. During the meeting Helm gave Reese the same reasons for his inability to perform many of his field maintenance duties. Reese told Helm that Helm's softball field maintenance duties included tending to the field between and after home games, and that in the future, his game-day softball duties were to be his priority.

On September 8, 2009, Helm sent Reese an email giving his schedule for the next several weekends. He informed Reese that he was available to set up the softball field but was unable to be at the games because of basketball workouts, a church camp-out, basketball team community service, basketball practice, and church conferences.

On October 5, 2009, Reese and Dr. Joanna F. Blount, Ancilla's dean of academic and student services, met with Helm. At the meeting Blount told Helm she expected him to meet his obligations as field maintenance assistant for the spring 2010 semester, including between and after game duties on softball game days, and that failure to perform his field maintenance duties

2

could result in termination of his employment. She followed up the meeting with an email to Helm in which she stated that Helm would be responsible for the full range of field maintenance duties, including his attendance between and after games. She further informed Helm that she expected him to meet these obligations effective spring 2010 semester, pointing out that he would have sufficient time before the start of softball season to develop an appropriate schedule.

On February 2, 2010, before the start of the spring 2010 softball season, Reese signed a letter of recommendation to the University of Colorado athletic department at Helm's request. In the letter Reese praised Helm's abilities as a head basketball coach.

The first home softball games of the spring 2010 season were played on March 9, 2010. Plaintiff set up for the games but did not remain to do maintenance between or after the games. The following day, Reese met with Helm again to discuss Helm's field maintenance responsibilities. Helm told Reese that he had not completed his duties because he had other obligations that were more important, such as community service, men's basketball, family, and church. Reese warned Helm that if he continued to refuse to perform his job duties, he could be discharged. After Helm failed to perform his game-day duties at several more games in March 2010, Reese recommended to Blount that Helm's employment be terminated. On March 31, 2010, Blount sent a memorandum to Dr. Ronald May, president of Ancilla, informing him that Reese had recommended that Helm be discharged for insubordination and failure to complete the requirements of the field maintenance position.

Reese prepared a performance evaluation of Helm which he discussed with Helm on May 20, 2010. The performance evaluation form indicated that the appraisal period was from July 1, 2009, to June 30, 2010. The form provided space for employee comments and also informed the

3

evaluated employee that he could submit comments within the next five working days. However, Ancilla has no appeal or review process for employee discharges resulting from performance problems.

In the job knowledge category of the performance evaluation form, Reese gave Helm a score of three, which the form defines as proficient performance. In the comment section of this category Reese wrote:

> You are still learning. You have only been with the Ancilla College men's basketball program for 5 years.  Recruiting in the inner city has created problems for you and the program in such a rural setting—As an example; recruiting players without cars.  We had fewer players (6–8) eligible to compete, more often, in games than in past years.  This created situations in which we were not competitive.

(Reese Aff., Ex. E6, DE 26-6 at 17.)

Reese gave Helm the lowest possible ratings, ones—meaning unsatisfactory performance—for his acceptance of responsibility, co-worker contacts, and work commitment. In each of these categories Reese mentioned Helm's failure to carry out his field maintenance responsibilities.  He gave Helm a summary rating of unsatisfactory, advising him:

> Last fall, Dean Joanna Blount and I discussed with you your failure to cover softball game-day duties.  I discussed this again with you this spring (2010) as you chose again not to cover the softball game-day field maintenance.  We discussed that your decision not to cover softball game day duties in the fall and spring would mean disciplinary action up to and including dismissal.  As a result, I will recommend to the President not renewing your employment agreement.

(*Id.* at 19.)

Reese told Helm he would have five days to present a response to the evaluation and that he could discuss the performance evaluation with May or Blount.  Blount told Helm she had made her decision and that he should see May.  Helm scheduled a meeting with May for May 24,

2010, but cancelled it after he reviewed his personnel file because he wanted to collect his thoughts. Shortly after the cancellation, on May 24, May hand-delivered a letter to Helm advising him that, on the recommendation of Reese and Blount, May was terminating his services, effective immediately.

Helm does not remember anyone in the athletic department or in Ancilla's administration ever making a comment to him about race. In his complaint, Helm points to Reese's comment about recruiting inner city athletes without cars as evidence that his discharge was racially motivated.

Helm's wife, Kelly Helm, had been employed at Ancilla, but on September 5, 2007, she signed a letter of resignation with an effective date of November 30, 2007. On June 10, 2008, she filed an EEOC charge of discrimination against Ancilla. On November 20, 2009, in the case of *Kelly Helm v. Ancilla Donini College*, 3:09-CV-546 (N.D. Ind. 2009), she sued for gender discrimination under Title VII of the Civil Rights Act of 1964.[1] As part of the Rule 26 disclosures in her suit, dated March 5, 2010, Steven Helm was listed as a potential witness. Moreover, on May 12, 2010, Kelly Helm gave a deposition in her suit at the Ancilla campus, mentioning her husband several times during the course of the deposition.

May did not know that Helm had been listed as a witness in his wife's suit until Helm filed his EEOC charge after his termination. May knew that Mrs. Helm was being deposed on May 12, 2010, but no employee from Ancilla attended the deposition and Ancilla did not receive a transcript until after Steven Helm had been discharged. Neither Reese nor Blount saw Mrs. Helm's witness disclosures or knew about her deposition until after Steven Helm had been

---

[1] District Court Judge Jon DeGuilio granted Ancilla's motion for summary judgment on January 5, 2012.

discharged.  Helm never discussed his wife's litigation with Reese, Blunt, or May and none of them mentioned the subject to him.

In his affidavit, Helm stated that during the fourteen months he served as both men's head basketball coach and field maintenance assistant, he "performed [his] work duties with respect to both of those roles in a satisfactory manner." (Helm Aff., DE 29 at 2.)  He further stated that, based on his own personal knowledge, he received discriminatory treatment from Ancilla.  Moreover, he asserted that he was treated differently than his fellow field maintenance assistant, Joe Yonto, who is Caucasian, and that his performance was essentially the same as Yonto's.  He declared "if there were any deficiencies in the performance of the duties relative to the Field Maintenance Assistant position, any such deficiencies were the same for Joe Yonto and for myself." (*Id.* at 7.)  Citing race as the only distinction between them, Helm concluded that his firing was an instance of racial discrimination.

In support of his claims, Helms has also submitted affidavits from his wife; from Jamie Greenlee, whose daughter Shayna was a cheerleader for the Ancilla basketball team, and whose daughter Ashley was a volleyball player coached by Mrs. Helm; and from Don Hinsdale, the bishop of Helm's church.  Mrs. Helm stated her belief that her husband received discriminatory treatment, including termination of his Ancilla employment, because of his race.  She also expressed her opinion that his performance as a field maintenance assistant was essentially identical to the performance of Joe Yonto.  She further stated that she perceived Reese's remark about recruiting in the inner city "to demonstrate a racially discriminatory and racially prejudicial bias." (Kelly Helm Aff., DE 30 at 6.) Greenlee and Hinsdale give their opinions that the inner city remark demonstrated racial bias and that Mr. Helm's performance did not warrant

his termination.

In his complaint, Helm cites the temporal proximity of his negative performance review and discharge to the Rule 26 disclosures and his wife's deposition as evidence that he was discharged in retaliation for being involved in her suit against Ancilla. He claims that the statement in his performance review concerning recruitment in the inner city supports his claim that his termination was racially motivated.

**B.     Summary Judgment Standard**

A party seeking summary judgment bears the initial responsibility of informing a court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. If the moving party supports its motion for summary judgment with affidavits or other materials, it thereby shifts to the non-moving party the burden of showing that an issue of material fact exists. *Keri v. Bd. of Trust. of Purdue Univ.*, 458 F.3d 620, 628 (7th Cir. 2006).

In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences and resolve all doubts in favor of that party. *Keri*, 458 F.3d at 628. A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Anderson v. Liberty Lobby*, 477 U.S. 242, 249–50 (1986).

**C.     Discussion**

A plaintiff can establish a racial discrimination claim under Title VII under either the direct or the indirect method. Under the direct method, he must present direct or circumstantial evidence that creates a "convincing mosaic of discrimination." *Winsley v. Cook County*, 563 F.3d 598, 604 (7th Cir. 2009). Circumstantial evidence may consist of suspicious timing, ambiguous statements, behavior toward other employees in the protected group, or evidence that similarly situated employees outside the protected class received systematically better treatment. *Good v. Univ. of Chi. Med. Ct.*, 673 F.3d 670, 675 (7th Cir. 2012). Under the indirect method, a plaintiff may establish a prima facie case of discrimination by showing (1) he was a member of a protected class, (2) he was meeting his employer's legitimate expectation, (3) he suffered an adverse employment action, and (4) other similarly situated employees who were not members of the protected class were treated more favorably. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

In addition to prohibiting racial discrimination, Title VII makes it unlawful "for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by [Title VII], or because he has made a charge, testified, assisted, or participate in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e-3(a). This type of discrimination is commonly called "retaliation." *Tomanovich v. Indianapolis*, 457 F.3d 656, 662 (7th Cir. 2006). A plaintiff may prove retaliation by using either the direct or the indirect method. Under the direct method, a plaintiff must show that (1) he engaged in a statutorily protected activity; (2) he suffered an adverse employment action; and (3) there was a causal connection between the two. *Id.* at 663.

To prove retaliation under the indirect method, the plaintiff must establish a prima facie case of retaliation by showing that (1) he engaged in a statutorily protected activity; (2) he met the employer's legitimate expectations; (3) he suffered an adverse employment action; and (4) he was treated less favorably than similarly situated employees who did not engage in statutorily protected activity. *Id.*

Helm contends that he has established a prima facie case of racially motivated and retaliatory discharge under the indirect method. However, he has wholly failed to designate admissible evidence to create a triable issue that he was meeting Ancilla's legitimate expectations at the time he was discharged. Ancilla has pointed to specific evidence that Helm's work in his role as a field maintenance assistant was unsatisfactory. Helm does not deny that he was informed on several occasions that this job included field maintenance between and after softball games, but continued to disregard these duties, even after warnings that failure to perform them could result in his termination.

The opinions of Helm, his wife, friend, and bishop do not create a genuine issue for trial regarding the adequacy of his work performance. This inquiry mandates looking at an employee's job performance through the eyes of his supervisors at the time of the termination. *Gates v. Caterpillar Inc.*, 513 F.3d 680, 689 (7th Cir. 2008). General statements made by co-workers that a plaintiff's job performance was satisfactory are insufficient to create a material issue of fact as to whether that plaintiff was meeting the employer's legitimate employment expectations at the time he was terminated. *Burks v. Wisc. Dept. Of Transp.*, 464 F.3d 744, 752–53 (7th Cir. 2006); *see also Herron v. DaimlerChrysler Corp.*, 388 F.3d 293, 300 (7th Cir. 2004) ("[T]hat plaintiff's coworkers may have thought that she did a good job . . . is close to

9

irrelevant.") Such general statements from the plaintiff himself, a member of his family, and friends carry even less weight.

Helm maintains that Reese's recommendation of him to the University of Colorado is evidence that he was meeting his employer's expectations. The Court disagrees. To begin with, the recommendation relates only to his performance as head basketball coach. Ancilla is not claiming that Helm was terminated because of any deficiency in his performance as head basketball coach, but has documented that the reason for his termination was his failure to perform all his duties as a field maintenance assistant. Furthermore, the letter was signed in February 2010, before the start of softball season, before Helm chose not to perform between- and after-game field maintenance. The February letter would not permit a reasonable jury to find that Helm was meeting Ancilla's legitimate expectations for the 2010 softball season.

Helm has also failed to establish that a similarly situated Ancilla employee received more favorable treatment than he. A comparison employee must be directly comparable to the plaintiff in all material respects, which includes showing that a coworker engaged in the same or comparable misconduct. *Patterson v. Ind. Newspapers Inc.*, 589 F.3d 357, 365–66 (7th Cir. 2009). Helm maintains that Yonto, the other field maintenance assistant, is such an employee. However, all the record reveals about Yonto is that he was also a field maintenance assistant. There is no evidence that Yonto declined to perform the duties of his job after having been warned that failure to do so could result in termination. There is no evidence that Reese was aware of any shortcomings in Yonto's work. Helm's conclusory statement that any deficiencies in his job performance were shared by Yonto is entitled to no weight, as both his own and Yonto's performance must be viewed from Ancilla's perspective. Therefore Yonto cannot serve

as a comparison employee.

Because Helm has offered insufficient evidence to create a genuine issue for trial on two of the elements of his prima facie case, Ancilla is entitled to summary judgment.

**D.     Conclusion**

Defendant Ancilla College's motion for summary judgment (DE 24) is GRANTED.

SO ORDERED on September 19, 2012.

s/ Joseph S. Van Bokkelen
Joseph S. Van Bokkelen
United States District Judge
